**Opinion issued August 15, 2023**



In The

# Court of Appeals

For The

## First District of Texas

———————————

**NO. 01-21-00535-CV**

———————————

**ROBERT H. GOODE, JR. Appellant**

**V.**

**STEPHANIE MCGUIRE, Appellee**

---

**On Appeal from the Probate Court No. 2**
**Harris County, Texas**
**Trial Court Case No. 468981**

---

**MEMORANDUM OPINION**

This is the second direct appeal from orders relating to the guardianship of

Lockie Goode. *See Goode v. McGuire*, No. 01-20-00028-CV, 2021 WL 4432534,

at *1 (Tex. App.—Houston [1st Dist.] Sept. 28, 2021, no pet.) (mem. op.)

(affirming appointment of unrelated permanent guardian of person of Lockie

Goode). In this appeal, Robert H. Goode ("Bob") challenges the probate court's order appointing Catherine Wylie as the guardian of the estate of his incapacitated wife, Lockie Goode. In his first issue, Goode asserts that the order is void for several reasons, including lack of subject matter and personal jurisdiction, lack of service, and failure to comply with certain statutory notice provisions. In his second issue, he asserts that the evidence did not support a finding that he was unsuitable to serve as guardian of Lockie's estate. In his third issue, he asserts that the probate court deprived him of his right to a jury trial on the question of whether Stephanie McGuire, who had instituted the guardianship proceedings, acted in good faith and was therefore entitled to attorney's fees and expenses.

We affirm.

**Background**

**I.    Prior appeal and guardianship of the person**

In the prior appeal, we detailed the evidence leading up to the imposition of a guardianship of the person for Lockie. *Goode*, 2021 WL 4432534, at *1. After Lockie had begun experiencing memory issues related to Alzheimer's disease, Bob left her alone for an extended period while he had back surgery and recuperated at a senior living facility. *Id.* Lockie needed help, and she reached out to friends, who, in turn, contacted her relatives, including her half-sister, Stephanie McGuire. *Id.* Lockie temporarily moved out of the marital home because it was unsafe and

uninhabitable. *Id.* Lockie and Bob lived apart for more than six months before reuniting. *Id.* at *2.

McGuire instituted guardianship proceedings, and Bob also sought to be appointed as her guardian. *Id.* In December 2019, the probate court appointed an unrelated person to be the guardian of Lockie's person, and, after finding that Bob was "unsuitable to serve as community administrator for Lockie's estate," the court ordered that a management trust be created for Lockie's benefit instead of appointing a guardian of Lockie's estate. *Id.* at *5.

Bob appealed the order appointing a permanent guardian of Lockie's person and the order creating the management trust. On appeal, we affirmed the order appointing a guardian of Lockie's person, but we did not reach the challenge to the creation of the management trust because, by the time the appeal was briefed for submission, the probate court had terminated the management trust and appointed Catherine Wylie to be the temporary guardian of Lockie's estate, pending contest.[1]

## II.    Guardian of the estate proceedings

### A.    McGuire and Bob file competing applications.

In late April 2020, McGuire filed an application for appointment of a guardian of the estate for Lockie. After Bob objected to McGuire's application, McGuire also sought appointment of a temporary guardian of the estate pending

---

[1]    *See* TEX. EST. CODE § 1022.002 (providing that probate court has continuing jurisdiction until guardianship is settled or closed).

3

contest. She alleged that Lockie had a one-half community interest in real and personal property worth about $2 million. McGuire also alleged that Lockie's son, Guy Chandler Roberts, supported the appointment of a guardian of Lockie's estate.

Bob objected to McGuire's applications for a permanent and temporary guardian of Lockie's estate. He filed a competing application for appointment of a guardian of Lockie's estate and, alternatively, sought the use of a less restrictive option to manage her assets, such as his appointment as community administrator or placing all the couple's outstanding assets into a preexisting irrevocable trust. Bob argued that, if the court appointed a guardian of the estate, it should be him because he had priority as Lockie's spouse. In the alternative, Bob asked that his daughter or Robert Stafford Cooper be appointed guardian of Lockie's estate. Bob also demanded a jury.

## B.    McGuire asserts that Bob is unsuitable to be guardian of Lockie's estate.

At a hearing in July 2020, McGuire's attorney argued that the determination of whether a person is suitable to serve as a community administrator involved the same facts and factors as a determination of whether a spouse is disqualified from serving as guardian of his spouse's estate. McGuire's attorney argued that because the court held a hearing in December 2019 and determined that Bob was not suitable to serve as a community administrator, no further evidentiary hearing was needed, and she urged the court to appoint an independent guardian of the estate.

4

She also argued that Bob had failed to respond to a significant amount of discovery relevant to more recent events. Notably, Bob had not provided her a copy of the irrevocable trust, despite discovery requests.

## C. The court decides to hold a bench trial due to the COVID-19 pandemic and appoints Catherine Wylie temporary guardian of Lockie's estate.

The court decided to hold a trial on whether Bob was disqualified from serving as guardian of Lockie's estate. The court acknowledged that Bob had demanded a jury trial, but it noted that because of the Texas Supreme Court's COVID-19 pandemic-related orders, there would be no jury trials in September 2020. The court did not set the case for trial, and about a week after the July hearing, the court appointed Catherine Wylie to serve as temporary guardian of Lockie's estate, pending contest.

## D. Discovery, sanctions, and McGuire's allegations of bad faith

In January 2021, McGuire sought to compel discovery and obtain sanctions for discovery abuse. McGuire argued Bob responded to her June 2020 discovery requests with 900 objections and some responses that McGuire maintained were inadequate. In her motion, she refuted each of Bob's objections. The court granted the motion for sanctions against Bob's attorneys, finding that they had provided false information to the court, and the court ordered Bob to comply with McGuire's discovery requests.

In early March 2021, McGuire responded to Bob's amended objection to her application for appointment of a guardian of Lockie's estate. She asserted that Bob had claims adverse to Lockie's interest, had previously been found to be disqualified from serving as community administrator, and was incapable of prudently managing Lockie's estate. McGuire asserted that Bob: (1) did not accept Lockie's lack of mental capacity or inability to make financial decisions, (2) caused her to change her estate plan, (3) controlled her financial life, (4) did not timely pay bills, (5) failed to use her assets to pay for her care, (6) used her assets to pay his legal fees, (7) allowed their properties to fall into serious disrepair, (8) failed to recognize the danger and financial harm to Lockie of his hoarding disorder, (9) mismanaged and misapplied Lockie's assets, (10) failed to deliver Lockie's assets to the temporary guardian of Lockie's estate, (11) failed to comply with rules and court orders, and (12) had been sanctioned for discovery abuse.

McGuire did not expressly request attorney's fees, but she pleaded that Bob and his attorneys "have not acted in good faith and for just cause" and that Bob had "acted in bad faith in pursuing his application to be appointed community administrator." McGuire prayed for "a final judgment denying [Bob's] applications and granting [her] application and for such other relief at law or in equity to which [she] is entitled." McGuire filed a traditional motion for summary judgment

6

asserting res judicata as to Bob's ability to serve as community administrator or as guardian of Lockie's estate.

**E.     Wylie becomes successor guardian of Lockie's person and moves her to a memory care facility.**

Meanwhile, in late January 2021, the court appointed Wylie as Lockie's guardian of the person, succeeding the prior guardian of the person. About two weeks later, Wylie reported that she had seen Bob and Lockie in their home and had a "nice" visit. But things changed in the following weeks. On March 10, 2021, Wylie moved Lockie to a memory care facility after several visits with Bob and Lockie demonstrated that he was unable to care for her. The next day, Wylie sent a detailed email to Lockie's guardian ad litem and counsel for both Bob and McGuire explaining the reasons for the move.[2]

---

[2]     In the email, Wylie recounted the reasons why she moved Lockie to a memory care facility. These reasons included Bob's obstinate and difficult behavior over the prior several weeks. In late February 2021, Wylie had visited Bob and Lockie. At that time, Bob was sick in bed, had soiled the sheets, and was so dehydrated that he had difficulty getting out of bed. Bob refused to consent to Wylie calling an ambulance or transporting him to the hospital. Because she believed that Bob was unable to care for Lockie, Wylie arranged for around-the-clock caregiver services. The director of the service that provided the caregivers informed Wylie that Bob yelled at and berated the first caregiver who arrived and told her to leave before the end of her shift. Several days later, Bob spoke to Wylie and said "nasty things" about the caregiver. At that time, Bob told Wylie that the caregiver was in the next room, but he refused to let Wylie speak to her. When Wylie immediately contacted the director of the service, she learned that Bob had not allowed the caregiver into the home that day. Wylie concluded that Bob had lied to her. The director of the service also told Wylie that this had happened so frequently with Bob that the service would no longer provide caregivers to Lockie. Although

7

**F.**     **Bob nonsuits all his claims related to the guardianship of Lockie's estate.**

On March 23, 2021, not quite two weeks after Lockie moved to the memory care facility, Bob filed a notice of nonsuit as to everything in his amended objection to McGuire's application, including his request to be appointed community administrator or guardian of Lockie's estate. Bob also asserted that McGuire had not pled for affirmative relief from him. McGuire disagreed, responding that she had a pending bad faith claim against Bob, which was set for a bench trial on April 5, 2021.

At a hearing on March 23, 2021, the probate court observed that Bob had filed a nonsuit and that no order was necessary, saying: "The nonsuit is effective upon it being filed." At the hearing, McGuire's counsel argued that Bob filed the nonsuit to avoid two motions for summary judgment, one that had been set for March 25, 2021. Bob's counsel responded: "We have nonsuited the claims that Mr. Goode has made in this case. So, effectively, as you stated early on, we would agree, it takes care of everything for this week."

---

Wylie arranged for a different care company to provide caregivers, Bob's behavior continued, and Wylie began searching for a memory care facility for Lockie.

According to Wylie, on the day she moved Lockie to a memory care facility, she visited the couple with her assistant. Wylie recalled that Bob berated her and that she found Lockie in deplorable conditions: both Lockie and the home were filthy. McGuire observed human feces on the sheets and floors of the home, and Lockie was not properly clothed and was hungry. Wylie took Lockie to get lunch and moved her into the memory care facility.

8

McGuire asked the court to consider her application for appointment of a permanent guardian of Lockie's estate on March 25, 2021, at a hearing that had been set on a motion for summary judgment, which was mooted by Bob's nonsuit. McGuire asserted that the appointment of a permanent guardian of Lockie's estate was necessary because there was no person with authority over Lockie's estate because Wylie was serving as temporary guardian pending contest but there was no longer a contest. The court asked whether Bob objected to hearing the application two days later on Thursday, March 25, 2021. Bob's counsel replied: "Your Honor, we dismissed our application and our objections. So we–we have–you know, our–we have no–we're no longer in this case." Bob did not object to moving forward on March 25, and the trial court agreed to hear McGuire's application on March 25, 2021.

### G. Hearing on McGuire's application for appointment of a permanent guardian of Lockie's estate

On March 25, 2021, the trial court considered McGuire's application for appointment of a permanent guardian of the estate, which was unopposed due to Bob's nonsuit. Neither Bob nor his attorney were present. At the end of the hearing, the court announced its intention to sign an order appointing Wylie as permanent guardian of Lockie's estate after the 10-day posting period expired. On April 12, 2021, after the citation by posting was returned, the court signed the order appointing Wylie permanent guardian of Lockie's estate.

9

**H.    Bob seeks a jury trial on McGuire's bad faith claim, which McGuire later nonsuits.**

Two days after the court appointed Wylie permanent guardian of Lockie's estate, the court notified counsel for McGuire and for Bob that it would hear McGuire's bad faith claim against Bob on April 29, 2021. In response, Bob filed a document entitled, "Objection to Denial of Constitutional Right to Jury Trial on Counterclaim for Bad Faith and Motion for Continuance of April 29, 2021 Trial Setting." Bob relied on the jury demand that he filed before his nonsuit, and he sought a continuance to allow the pending matter to be tried to a jury. He also argued that McGuire had not properly pleaded a bad faith claim because, although she alleged that he had acted in bad faith, she did not plead for fees or expenses to be assessed against him.

McGuire later nonsuited her bad faith claims against Bob and his attorneys. The record in this case does not include a pleading, notice, or motion that effectuates a nonsuit of the bad faith claim, but McGuire represented that she nonsuited the bad faith claim in a bench memo and in comments to the court at the hearing on her application for attorney's fees.[3]

---

[3]    In September 2021, McGuire mentioned the nonsuit in her "Memorandum Regarding Robert H. Goode's Voluntary Nonsuit of His Alleged Right to a Jury Trial," which stated:

> The only issue before the Court at this time is [McGuire's] request for attorneys' fees that she pled for on April 28, 2020, through her Application for Appointment of Permanent Guardian of the Estate

**I.     McGuire's counsel seeks and obtains order for payment of attorney's fees from Lockie's assets.**

Almost three months after the probate court appointed Wylie permanent guardian of Lockie's estate, McGuire filed an application for payment of attorney's fees and expenses incurred from December 13, 2019, through June 8, 2021. These fees were for legal services related to securing a guardian of Lockie's person and estate and the intermediate pleadings, discovery, motions, briefing, and hearings. She asked for a total of $163,172.89, which represented $160,433.25 in fees, plus $9,969.64 for expenses, less $6,930.00 in discovery sanctions that had previously been awarded. In her application, McGuire asserted that the fees were reasonable and necessary and that the results of the legal proceedings were in Lockie's best interest. McGuire also asserted that her applications and motions were "filed in good faith and with probable cause." And she asked that the fees be paid from "funds of the guardianship estate of Lockie Goode, assets of Lockie Goode held and/or managed by Robert H. Goode, Jr. [Bob] and/or the *Robert Harding Goode,*

and her July 2, 2021 Application for Payment of Attorney Fees and Expenses. . . .
. . . .
And finally, [Bob's] entire omission of [McGuire] dismissal of her bad faith claims against him and his attorneys in this cause makes one wonder if he even knows [McGuire] is not asking for anything from him. .

In addition, at a hearing on attorney's fees on August 19, 2021, McGuire's counsel reminded the probate court that McGuire had withdrawn her bad faith claim against Bob and his counsel.

*Jr. and Lockie Linea Goode Irrevocable Trust.*" She attached detailed contemporaneous billing records to her application.

Bob, as a beneficiary and trustee of the Robert Harding Goode, Jr. and Lockie Linnea Goode Irrevocable trust, filed a plea in abatement and objection to McGuire's application for payment of fees. He argued that the trust was not part of the guardianship estate and the trustee had never been served and was not a party to the proceeding. Aside from this objection to awarding fees from the trust, there was no other challenge to McGuire's application for fees: he did not challenge the amount, whether the fees incurred were necessary and reasonable, whether McGuire had acted in good faith and with just cause, or whether the fees were supported by sufficient evidence.

In August 2021, the probate court held a hearing on McGuire's application for attorney's fees. At the hearing Bob's counsel argued that he had demanded a jury trial on fees, but McGuire's counsel noted that Bob had nonsuited his claims pertaining to the guardianship and she had nonsuited her bad faith claim against Bob. On September 1, 2021, the probate court entered an order awarding McGuire's counsel legal fees in the amount of $136,000, plus costs and expenses of $9,969.64, for a total of $145,969.64. The order states that McGuire brought her application for appointment of a permanent guardian of Lockie's estate "in good faith and for just cause." It also states that the fees and expenses shall be paid

12

"from the funds of the guardianship estate of Lockie L. Goode and/or from assets of Lockie L. Goode held by Robert H. Goode, Jr. [Bob]." The court intentionally excluded payment from the irrevocable trust by striking through that language on the proposed order before signing it.

On September 7, 2021, Bob filed a notice of appeal from the probate court's September 1, 2021 order.

## Analysis

On appeal, Bob raises three issues. In his first issue, he argues that the April 21, 2021 order appointing Wylie permanent guardian of Lockie's estate was void due to lack of subject matter jurisdiction, personal jurisdiction, lack of service, failure to post, lack of compliance with eight separate statutory notice provisions, and lack of written waiver of hearing. In his second issue, he argues that the evidence did not support a finding that he was unsuitable to serve as guardian of Lockie's estate, he lacked priority, he waived his right to a jury, or he waived his right to notice of hearing. In his third issue, he argues that the court denied his constitutional right to a jury on McGuire's good faith and her attorney's fees and expenses.

McGuire argues that Bob's first two issues are waived because he did not timely file a notice of appeal from the April 12, 2021 order appointing Wylie permanent guardian of the estate. McGuire also asserts that Bob was not entitled to

13

a jury trial on McGuire's application for attorney's fees because his prior demand for a jury did not survive his nonsuit.

## I.    Scope of this appeal

Because this impacts our jurisdiction, we begin our analysis with McGuire's contentions that two of Bob's issues are waived because he did not file a timely notice of appeal from the April 2021 order appointing a permanent guardian of Lockie's estate. Bob does not directly address the untimeliness of his appeal, but he repeatedly argues that the April 2021 guardianship order is void and should be vacated.

### A.    Relevant law

#### 1.    Direct and collateral attacks

A party wishing to alter a trial court's judgment may bring a direct attack on the judgment. *See Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex. 1973). "A direct attack is a proceeding instituted for the purpose of correcting the earlier judgment." *Id.* A party may directly attack a judgment in the court that rendered the judgment–for example by motion for new trial or bill of review–or in an appellate court by filing an appeal. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012); *Austin Indep. Sch. Dist.*, 495 S.W.2d at 881. A party may directly attack a judgment on the basis of voidness or any other error that

probably caused the rendition of an improper judgment. *PNS Stores*, 379 S.W.3d at 271.

Unlike a direct attack, a collateral attack does not seek to change the judgment. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). "A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Id.* "Collateral attacks on final judgments are generally disallowed because it is the policy of the law to give finality to the judgments of the courts." *Id.* at 345 (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex. 1989)). Void judgments are an exception to this rule; void judgments may be collaterally attacked at any time. *PNS Stores*, 379 S.W.3d at 272. A judgment is void if the court rendering the judgment had no jurisdiction over the parties, no subject matter jurisdiction, no jurisdiction to enter the particular judgment, or no capacity to act as a court. *Browning*, 165 S.W.3d at 346.

### 2. Time for filing an appeal

To invoke the jurisdiction of an appellate court, a party must timely file a notice of appeal. *See* TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."); *Sweed v. Nye*, 323 S.W.3d 873, 874–

75 (Tex. 2010) (holding that timely filed notice of appeal invokes appellate court jurisdiction even when notice of appeal is defective because parties are permitted to amend notice of appeal). Subject to certain exceptions not relevant in this case, the "notice of appeal must be filed within 30 days after the judgment is signed." TEX. R. APP. P. 26. 1. "After the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally." *In re Thompson*, 569 S.W.3d 169, 172 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

### 3.       Appeals in guardianship proceedings

Generally, appeals may be taken only from final judgments. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). But probate proceedings are an exception to the "one final judgment" rule, because a probate court has continuing jurisdiction from the time an application for appointment of a guardian is filed until the guardianship is settled or closed. TEX. EST. CODE § 1022.002; *see Lehmann*, 39 S.W.3d at 192. At times, the need arises to review "controlling, intermediate decisions before an error can harm later phases of the proceeding." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (quoting *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App.—Austin 2000, pet. denied)). In probate proceedings, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *De Ayala*, 193 S.W.3d at 578 (quoting *Lehmann*, 39 S.W.3d at

16

192); *see* TEX. EST. CODE § 1022.001(c) ("A final order issued by a probate court is appealable to the court of appeals.").

A probate court order is final for the purposes of appeal when "there is an express statute . . . declaring the phase of the probate proceedings to be final and appealable." *De Ayala*, 193 S.W.3d at 578 (quoting *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995)). In the absence of such a statute, a probate court order is final for the purposes of appeal when it "dispose[s] of all parties or issues in a particular phase of the proceedings." *De Ayala*, 193 S.W.3d at 579; *see, e.g.*, *In re Phillips*, No. 01-14-01004-CV, 2016 WL 3391249, at *1 (Tex. App.— Houston [1st Dist.] June 16, 2016, no pet.) (mem. op.) (noting that Texas Estates Code specifically allows a party to appeal from order or judgment appointing guardian); *see also* TEX. EST. CODE 1152.001 ("Pending an appeal from an order or judgment appointing a guardian, the appointee shall continue to: (1) act as guardian; and (2) prosecute a pending suit in favor of the guardianship.").

## B.    Notice of appeal

In his first issue, Bob argues that the April 12, 2021 guardianship order is void for multiple reasons. He argues that the "[l]ack of jurisdiction mandates setting aside or vacating the April 12, 2021 order appointing guardian." In his second issue, Bob challenges the merits of the April 12, 2021 order. He challenges sufficiency of the evidence to support the appointment of Wylie instead of himself

as guardian of Lockie's estate. He also challenges the court's implied finding that he was unsuitable to serve as Lockie's guardian despite the statutory priority afforded to a ward's spouse. Regarding both of these issues, Bob argues that the April 12, 2021 order should be vacated.

Although the trial court signed the order appointing Wylie permanent guardian of Lockie's estate on April 12, 2021, Bob did not file his notice of appeal until 148 days later, on September 7, 2021. Generally, a notice of appeal must be filed within 30 days after the judgment is signed. Tex. R. App. P. 26.1. Bob's notice of appeal was untimely and did not confer jurisdiction on this court for a direct appeal from the order appointing Wylie permanent guardian of Lockie's estate. We conclude that we lack jurisdiction over a direct appeal from Bob's first two issues.

The notice of appeal was, however, timely as to the September 1, 2021 order awarding attorney's fees to McGuire's attorney. Bob's third issue addresses this order, and we will address it.

## II. Collateral attack and voidness of the April 2021 guardianship order

Both Bob and McGuire devote substantial portions of their briefing to arguing about whether the April 12, 2021 order is void. In his first issue, Bob argues that the April 12 guardianship order is void for lack of subject matter jurisdiction, based on his contention that the probate court did not acquire

jurisdiction prior to posting in accordance with the statute. He also asserts that McGuire failed to comply with statutory notice and service requirements, and that the court lacked personal jurisdiction.

McGuire construes Bob's challenge to the attorney's fee order of September 1, 2021 as a collateral attack on the April 12, 2021 order, although Bob did not argue that the court erred by entering the September 1, 2021 order because it was based on a void order appointing a permanent guardian of Lockie's estate. He argues that the probate court erred by not holding a jury trial on the question of attorney's fees. Even if we construed Bob's brief as presenting a collateral attack on the April 12, 2021 guardianship order, however, we would find Bob's arguments meritless because the probate court had subject matter jurisdiction, as we will briefly explain.

## A. Subject matter jurisdiction

First, Bob challenges the trial court's subject matter jurisdiction, arguing that citation by posting is "the beginning of a guardianship," and alleging that it never happened in this case. Both contentions are incorrect. First, "[a] guardianship proceeding begins with 'the filing of the application for the appointment of a guardian of the estate or person, or both.'" *Guardianship of Fairley*, 650 S.W.3d 372, 381 (Tex. 2022) (quoting TEX. EST. CODE § 1022.002(d)). Accordingly, the probate court acquired subject matter jurisdiction over this guardianship

proceeding when McGuire filed her first application for guardianship. *See Fairley*, 650 S.W.3d at 381.

## B.      Personal jurisdiction

Next, Bob contends that he was not personally served. A judgment may be challenged as void through a collateral attack when a failure to establish personal jurisdiction violates due process. *PNS Stores*, 379 S.W.3d at 272–73. Here, due process was not violated because the record shows that Lockie, then the proposed ward, was served with citation and that Bob appeared generally in the guardianship proceedings, objecting to McGuire's application for guardianship of Lockie's estate and seeking appointment as guardian of her estate until he nonsuited his claims. A party waives any challenge to personal jurisdiction by making a general appearance in the case or by failing to timely object to the court's jurisdiction. *See Fairley*, 650 S.W.3d at 386 (holding that ward made general appearance through attorney ad litem, waiving any challenge to personal jurisdiction); *Phillips*, 2016 WL 3391249, at \*5 ("A party making a general appearance in a guardianship proceeding is not required to be served with citation."); *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Bob has waived any challenge to the court's personal jurisdiction over him.

20

## C. Notice of trial

Bob contends he did not receive proper notice of the March 25, 2021 "trial" on McGuire's application for a guardian of Lockie's estate. Bob's counsel was present at the March 23 hearing, during which the court decided to consider McGuire's application for appointment of a permanent guardian of Lockie's estate on March 25 at a hearing on a motion that had been mooted by Bob's nonsuit. The court noted that Bob's nonsuit was effective. Bob was no longer contesting Wylie's appointment as permanent guardian of the estate. The probate court asked Bob's counsel if she had any objection to considering McGuire's application on March 25. Bob did not object to moving forward on March 25, and the trial court agreed to hear McGuire's application on March 25. Bob had actual notice of the trial through his attorney, who affirmatively waived any complaint to proceeding to trial on March 25, 2021.

## D. Citation by posting

Bob asserts that citation by posting in accordance with the Estates Code was never accomplished, but the trial court ensured that the citation by posting was returned before signing the order appointing Wylie permanent guardian of Lockie's estate. The court stated on the record on March 25, 2021 that it was inclined to appoint Wylie, who had been serving as temporary guardian of Lockie's estate and permanent guardian of her person, to be permanent guardian of

21

Lockie's estate. But the court did not sign the order appointing Wylie permanent guardian of Lockie's estate until after the return of the citation by posting had been received.

### E. Failure to notify adult siblings

Bob argues that statutory provisions requiring notice to Lockie's siblings were not followed. But failure to serve an adult sibling of a proposed ward is not a jurisdictional defect. *See Phillips*, 2016 WL 3391249, at *5. Bob cannot bring this challenge by a collateral attack.

### F. Sworn affidavit regarding compliance with notice

Bob argues that a sworn affidavit regarding compliance with statutory requirements was never filed. *See* TEX. EST. CODE 1051.104(b). To support this argument on appeal, Bob directs us to "Supp CR 1. (Index of base file from April 28,2020 through December 2021)." The appellate record in this court includes a two-volume clerk's record filed November 23, 2021 and a 24-volume clerk's record filed November 29, 2021, which consists of volumes numbered 1-8 with volumes 3 and 6 each consisting of 9 parts. Each of the 26 volumes of clerk's records includes an index of what is in that particular volume, but no "index of the base file from April 28, 2020 through December 2021" appears in the appellate record. We need not determine whether Bob could bring this challenge collaterally because these contentions are inadequately briefed in that he has failed to support

22

this argument with appropriate citations to the record. *See* TEX. R. APP. P. 38.1; *Phillips*, 2016 WL 3391249, at *5 ("[A]n appellant bears the burden to bring forward an appellate record that enables the appellate court to determine whether appellant's complaints constitute reversible error").

* * *

Having explained why Bob's direct attacks on the April 2021 order are waived and his collateral attacks are unavailing, we overrule Bob's first two issues on appeal.

## III.  Lack of jury trial on McGuire's attorney's fees

On August 19, 2021, the probate court held a hearing on McGuire's attorney's application for fees. In his third issue, Bob argues that the trial court erred by conducting this hearing only to the bench instead of having a jury trial on the question of attorney's fees. Bob argues that he filed a jury demand and objected to the lack of a jury at the August 19, 2021 hearing.

Bob filed his jury demand on May 28, 2020, two days after he filed his objection to McGuire's application for appointment of a guardian of Lockie's estate. On March 23, 2021, Bob filed a nonsuit of all his claims and contentions relating to the guardian of the estate proceeding.

"When a party nonsuits a legal action, the parties are put back in the same positions as before the filing of the suit." *Hagberg v. City of Pasadena*, 224

23

S.W.3d 477, 484 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *accord Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 399 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Parker v. JPMorgan Chase Bank,* 95 S.W.3d 428, 432 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Crofts v. Courts of Civil Appeals for the Eighth Supreme Judicial Dist.,* 362 S.W.2d 101, 104 (Tex. 1962) (noting that dismissal of suit "places the parties in the position that they were in before the court's jurisdiction was invoked just as if the suit had never been brought"). Bob's March 2021 nonsuit was effective when filed, and it put the parties in the positions they held before he filed his objection to McGuire's application and competing application for appointment as the guardian of Lockie's estate. That is, McGuire had a pending application for appointment of a permanent guardian of Lockie's estate, and Bob had no objections, no competing application, and no jury demand.

Bob did not oppose McGuire's attorney's fees application except to the extent it asked for fees to be paid from the irrevocable trust. The court did not order any payments to come from the irrevocable trust. And at the hearing in August 2021, Bob's counsel objected to the hearing proceeding without a jury to determine the amount of attorney's fees.

We hold that Bob was not entitled to a jury trial regarding the amount of fees and costs awarded to McGuire's attorney because he had no jury demand on file and he had not challenged the application for fees. We overrule Bob's third issue.

**Conclusion**

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.